**SAIBER LLC**
Nancy A. Washington
One Gateway Center - 13th Floor
Newark, New Jersey 07102
(973) 622-3333

Attorneys for Creditors,
RHB Realty, LLC, Craig and Kerry Seminara,
and Michael Ruppe

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Stanley F. Kleinschmidt, Jr.<br>and Corrine A. Kleinschmidt,<br><br>Debtors. | Chapter 7<br><br>Case No. 09-13545 (NLW) |
| RHB Realty, LLC, Craig Seminara,<br>Kerry Seminara, and Michael Ruppe,<br><br>Plaintiffs<br><br>v.<br><br>Stanley F. Kleinschmidt, Jr. and Corrine A.<br>Kleinschmidt,<br><br>Defendants. | Adv. Pro. No.<br><br><br>ADVERSARY COMPLAINT<br>TO OBJECT TO DISCHARGE OF<br>DEBTORS AND DETERMINE<br>NONDISCHARGEABILITY OF DEBT |

Plaintifffs, RHB Realty, LLC, ("RHB Realty"), Craig and Kerry Seminara (the

"Seminaras"), and Michael Ruppe, ("Ruppe", and collectively, with RHB Realty and the

Seminaras, the "Creditors"), through their undersigned attorneys, hereby allege for their

*Adversary Complaint to Object to Discharge of Debtors and to Determine Nondischargeability*

*of Debt*, against debtors, Stanley F. Kleinschmidt, Jr. and Corrine A. Kleinschmidt (collectively,

the "Debtors" or "Defendants"), as follows:

## PARTIES

1.      Defendants Stanley F. Kleinschmidt, Jr. ("Kleinschmidt") and Corinne A. Kleinschmidt are individuals residing at 22 Oakwood Avenue, Mine Hill, New Jersey, and the Debtors in this Chapter 7 proceeding.

2.      Plaintiff RHB Realty, LLC is a New Jersey limited liability company with an address at 5 Pond Drive, Boonton, New Jersey, and is authorized to do business in the State of New Jersey.  RHB Realty is a creditor in this Chapter 7 proceeding.

3.      Plaintiffs Craig and Kerry Seminara are individuals residing at 14 Larsen Drive, Succasunna, New Jersey, and are creditors in this Chapter 7 proceeding.

4.      Plaintiff Michael Ruppe is an individual residing at 75 Musiker Avenue, Randolph, New Jersey, and is a creditor in this Chapter 7 proceeding.

## JURISDICTION AND VENUE

5.      This adversary proceeding is brought in accordance with Rule 7001 of the Federal Rules of Bankruptcy Procedure.

6.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

7.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (I), and (J).

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## FACTUAL BACKGROUND

1.      On or about February 13, 2009 (the "Petition Date"), Debtors filed a voluntary petition (the "Petition") including statement of financial affairs ("Statement of Financial

Affairs") and schedules thereto (the "Schedules") under Chapter 7 of the United States Bankruptcy Code.

2.      Kleinschmidt last filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey on or about 1995.  Kleinschmidt was discharged on or about September 15, 1995.

3.      On or about March 19, 2009, the Chapter 7 Trustee, David Wolff (the "Trustee"), conducted the first meeting of creditors pursuant to Section 341(a) of the Bankruptcy Code (the "341 Meeting"), at which the Trustee examined the Debtors under oath.

4.      On or about May 18, 2009, the Creditors timely filed a request for an extension of time within which to file a complaint to determine the dischargeability of the debts owed by Debtors and to object to the discharge of the Debtors.

5.      On or about April 13, 2009, the Trustee retained the law firm of Porzio Bromberg & Newman, P.C., as special counsel ("Special Counsel"), to investigate all potential estate claims, and prosecute adversary proceedings if need be, on behalf of the estate.

6.      On or about June 2, 2009, Special Counsel conducted a Rule 2004 Examination of Debtor Kleinschmidt.  Counsel for the Creditors participated in that examination.

7.      On or about June 8, 2009, the Court entered an Order, granting Creditors' request for an extension and setting the deadline of August 17, 2009 for the filing of a Complaint to object to discharge and to determine the dischargeability of debts.

8.      In an effort to determine the Debtors' financial condition, Creditors engaged in independent investigation.  This investigation has led the Creditors to conclude that the Debtors should not be granted a discharge and that certain debts identified herein are nondischargeable.

9.      By correspondence dated June 18, 2009 and July 31, 2009 to Debtors' counsel, Creditors requested that Debtors provide them with, *inter alia*, information pertaining to the Debtors' ownership interest in, and income derived from, among other entities, DSK Properties, LLC ("DSK Properties") and DSK Contractors, LLC ("DSK Contractors").

10.     Specifically, Creditors requested, *inter alia*, all financial records of DSK Properties, DSK Contractors, or any other entity or business in which Debtors have any interest, including without limitation, accounting records, invoices, receipts, bills, bank statements, income statements, balance sheets, profit/loss statements, accounts payable records, expenditure statements, and copies of the tax returns for the years 2004, 2005, 2006, 2007, and 2008.

11.     Creditors also sought information regarding all income, gifts, commissions, loans, investments, contributions, or payments received by Debtors from any source, including without limitation, Real Estate Consultants, Renown Realty, RE/MAX Intl., Inc., YTB Travel Network, Escapetravel4u.com, and Church of the Hills.

12.     Creditors further requested that Debtors identify all professionals that performed services for either or both Debtors, DSK Properties, DSK Contractors, or any other entity or business in which Debtors have any interest, for the time period from January 1, 2004 through present, including without limitation, financial advisors, legal counsel, and/or accountants.

13.     Debtors testified at the 341 Meeting that they have interests in two entities known as DSK Contractors and DSK Properties.  Debtors have indicated that of the two entities, DSK Contractors is the operating entity, through which Debtors, together with Dean Smith ("Smith"), conducted their real estate development business, while DSK Properties is a company through which Debtors purchased real estate and did general contracting work.

14.    Upon information and belief, DSK Contractors was formed on or about April 7, 2000.

15.    Upon information and belief, DSK Contractors has been operating since on or about October 28, 2005.

16.    Upon information and belief, DSK Properties was formed on or about February 3, 2004.

17.    Upon information and belief, DSK Properties has been operating since on or about March 4, 2004.

18.    In 2005, Debtors filed an individual tax return, as well as, a tax return for partnership income from DSK Properties.

19.    Debtors' 2005 tax returns do not appear to reflect any income derived from DSK Contractors.

20.    In fact, there are no tax returns which allow Creditors to trace Debtors' income from DSK Contractors.

21.    While Debtors have produced some documents in response to Creditors' document and information requests, to date, the Debtors have failed to provide the overwhelming majority of the documents requested.  Specifically, Debtors have failed to produce, *inter alia*, the following documents and information necessary for the Creditors to ascertain the Debtors' financial condition or business transactions:

(1) 2005 Tax return of DSK Contractors, 2006 – 2008 Tax returns of Stanley F. Kleinschmidt, Jr. and Corinne A. Kleinschmidt, DSK Properties, DSK Contractors, or any other entity or business in which Debtors have any interest, including supporting documentation for same;

(2) deposit slips or other documentation reflecting the source of deposits made to the bank accounts of Stanley F. Kleinschmidt, Jr.

and Corinne A. Kleinschmidt, DSK Properties, DSK Contractors, or any other entity or business in which Debtors have any interest, for the time period January 1, 2004 through present;

(3) financial records of DSK Properties, DSK Contractors, or any other entity or business in which Debtors have any interest, including without limitation, general ledgers, invoices, receipts, bills, income statements, balance sheets, profit/loss statements, and/or accounts receivable and payable records.

22.    Without the foregoing records, Creditors cannot determine Debtors' financial condition and have no way of confirming the representations made by Debtors in their Petition and Schedules.

23.    Kleinschmidt has suggested that his accountant was in possession of the financial records of Debtors and DSK Contractors and DSK Properties, and that the delay in preparing and filing tax returns for years 2006 through present is a result of the accountant's demands for payment.

24.    Kleinschmidt testified at his 2004 Examination that the reason for failing to file tax returns for years 2006, 2007, and 2008 is that Debtors have been unable to afford the accountant's services for preparing and filing such returns.

25.    By correspondence dated August 7, 2009, Debtors, through their counsel, confirm that the 2006, 2007, and 2008 tax returns have not yet been prepared by their accountant.

26.    Creditors, through independent investigation of Debtors' financial condition, subpoenaed Debtors' former accountant, Daniel P. Vigilante, C.P.A., and confirmed that the most recent tax return filed by Mr. Vigilante on behalf of Debtors and DSK Properties was for year 2005.  Mr. Vigilante advises that he has no records of the Debtors, DSK Contractors, or DSK Properties beyond those related to the 2004 and 2005 tax returns, and no returns at all for DSK Contractors.

27.    Debtors' 2004 tax return indicates a gross income of $188,830.00.

28.    Debtors' tax return filed for 2005 (the last tax return filed by Debtors) indicates a net loss of $18,743.00. This is the only income identified in Debtors' Statement of Financial Affairs.

29.    The Debtors' dramatic loss of income from 2004 - 2005 cannot be explained by any of the documents or information produced by Debtors to date.

30.    Debtors have failed to produce documents reflecting the sources of income through which Debtors purported to maintain a lifestyle based upon monthly living expenses of $12,043.33, as set forth in Schedule J of the Debtors' Petition.

31.    Mr. Vigilante advises that despite being owed money by Debtors in connection with his accounting services, Debtors have failed to list him as a creditor in the Petition.

32.    By correspondence dated August 7, 2009, Debtors have indicated that they do not possess any deposit slips or other documentation reflecting the source of deposits made to the bank accounts of Stanley F. Kleinschmidt, Jr., Corinne A. Kleinschmidt, DSK Properties, DSK Contractors, or any other entity or business in which Debtors have any interest.

33.    By correspondence dated August 7, 2009, Debtors responded to Creditors' repeated request for all financial records of DSK Properties, DSK Contractors, or any other entity or business in which Debtors have any interest, as follows:

> All of the records in the possession of the Debtors have been provided except for two full plastic tubs of receipts from the building of four homes. If you wish to review these documents, I will have the Debtors bring them to my office and schedule a date and time for both of you to review them at my office.

34.    Debtors' Petition provides no indication of any independent source of income or assets on behalf of Corinne A. Kleinschmidt. Upon information and belief, she has provided

services for and presumably derived income from the entities in which Debtors have an interest, including without limitation, DSK Contractors and DSK Properties.

**A.      Failure to Disclose All Sources of Income in Petition and Statement of Financial Affairs**

35.      Section 1 of the Statement of Financial Affairs in relevant part requires that the Debtor identify all gross income received by the debtor from employment, trade, profession, or operation of the debtor's business within the two years immediately preceding the calendar year of the commencement of the bankruptcy case.

36.      Debtors indicated that their gross income for 2005 was a net loss of $18,743.00.

37.      Debtors fail to identify any other gross income for the years 2007 through 2009.

38.      This is contrary to documents produced by Debtors, which indicate that, at a minimum, Debtors received income from Renown Realty, Inc., t/a Re/Max Renown Realty, Inc. ("Renown Realty") in the amount of $72,128.76, in 2008.  Upon information and belief, Debtors' gross income from Renown Realty in 2008 was $49,890.13.

39.      Debtors also received income from Renown Realty in 2007, the fact and amount of which are not indicated on the Statement of Financial Affairs.

40.      In addition, Debtors do not identify any income from the operation of any of the entities in which they have a business interest, including without limitation, DSK Contractors or DSK Properties.

41.      Section 2 of the Statement of Financial Affairs in relevant part requires that the Debtor identify all income received by the debtor other than from employment, trade, profession, or operation of the debtor's business within the two years immediately preceding the commencement of a bankruptcy case.

42.     Debtors indicated that they earned no such income within the two years immediately preceding the commencement of the bankruptcy case.

43.     Upon information and belief, Debtors have received income from, at a minimum, the following:

a.  Commissions       and       awards       from       YTB       Travel Network/Escapetravel4u.com/YOURTRAVELBIZCOM, Inc. in the amount of at least $5,294.90 in 2008;

b.  gifts from members of Church of the Hills in the amount of at least $28,490.00 in 2007 and 2008; and

c.  rental income from Debtors' property located at 318 Center Grove, Randolph, New Jersey ("Randolph Property").  Debtors testified at the 341 Meeting that the Randolph Property was last occupied by a tenant until January 2009 at the monthly rent of $1,210.00.  Because Debtors have failed to file tax returns within the two years immediately preceding the commencement of the bankruptcy case, it is impossible to confirm the rental income obtained therefrom.  However, Debtors' most recent tax return from 2005 identifies the rental income for the year 2005 as $22,800.00.

44.     Debtors have failed to properly disclose all sources of income in their Petition and Statement of Financial Affairs.

**B.      Failure to Disclose All Gifts in Statement of Financial Affairs**

45.     Section 7 of the Statement of Financial Affairs in relevant part requires the Debtor to identify all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less

than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient.

46.     Documents produced by Debtors indicate that they made payments in excess of $100 per recipient, in fact, totaling $6,887.00 to the Church of the Hills, and $785.00 to Love of Jesus Family Church Ministries in 2008.

47.     Pursuant to Section 7 of the Statement of Financial Affairs, Debtors failed to disclose such gifts or charitable contributions on their Petition.

**C.     Failure to Disclose Officer, Director, Partner or Membership Positions Maintained at Business Entities in Financial Statement.**

48.     Section 18 of the Statement of Financial Affairs in relevant part requires that the Debtor identify the nature, location, and name of <u>all</u> businesses in which Debtor(s) were an officer, director, partner, or managing executive of a corporation, partnership, or sole proprietorship within the six year period immediately preceding the Filing Date in his Statement of Financial Affairs.

49.     Upon information and belief, DSK Properties is a New Jersey limited liability company that purchases real estate and performs contracting work.

50.     According to documents produced by Debtors, Kleinschmidt was the sole proprietor of DSK Properties within the six year period immediately preceding the Filing Date.

51.     Upon information and belief, Kleinschmidt continues to maintain his position as sole proprietor of DSK Properties.

52.     Although Debtors included DSK Properties and DSK Contractors in Sections 12 and 13 of Schedule B of the Debtors' Petition, pursuant to Section 18 of the Statement of Financial Affairs, Debtors failed to include DSK Properties as a named business entity and to

indicate that Kleinschmidt was the sole proprietor of DSK Properties within the six year period immediately preceding the Filing Date.

53.      Upon information and belief, DSK Contractors is a New Jersey limited liability company that is engaged in the business of real estate development.

54.      According to documents produced by Debtors, Kleinschmidt was a member, partner, and/or officer of DSK Contractors within the six year period immediately preceding the Filing Date.

55.      Upon information and belief, Kleinschmidt continues to be a member, partner, and/or officer of DSK Contractors.

56.      Pursuant to Section 18 of the Statement of Financial Affairs, Debtors failed to include DSK Contractors as a named business entity and to indicate that Kleinschmidt was a member, partner, and/or officer of DSK Contractors within the six year period immediately preceding the Filing Date.

**D.      Failure to Disclose Books, Records, and Financial Statements on Statement of Financial Affairs**

57.      Section 19 of the Statement of Financial Affairs in relevant part requires the Debtor to identify certain information in connection with the books, records, and financial statements of the debtor, including the identification of accountants who within two years immediately preceding the filing of the bankruptcy kept financial records of the debtor.

58.      Debtors' former accountant retained certain financial records of Debtors, including tax information until December 2009, when all such information was returned to Debtors.

59.      Debtors have failed to properly respond to Section 19 of the Statement of Financial Affairs and/or identify the information required to confirm Debtors' financial condition.

**E.      Failure to Maintain Books, Records, and Financial Statements**

60.      Debtors have an obligation to, *inter alia*, keep, maintain and preserve financial records in a manner appropriate to Debtors' businesses.

61.      Debtors have failed to maintain any books, records, and financial statements sufficient to allow Creditors to trace the Debtors' financial dealings to any degree, although apparently the Debtors have maintained "two full plastic tubs of receipts from the building of four homes," which may or may not relate to some of their business and financial dealings.

62.      In addition, Debtors admit that they have failed to file tax returns for the years 2006, 2007, and 2008.

63.      Debtors admit that the limited liability company of which Kleinschmidt is a member, partner, and/or officer, DSK Contractors, has failed to file tax returns for the years 2006, 2007, and 2008.

64.      Debtors admit that the sole proprietorship, DSK Properties, has failed to file tax returns for the years 2006, 2007, and 2008.

65.      There are no tax returns reflecting income received by and through DSK Contractors for the years 2005, 2006, 2007, and 2008.

66.      Debtors' purported explanation for their failure to file such tax returns is that they have been unable to afford the cost of paying their accountant to prepare and file such returns on their behalf.

67.     The limited information produced by Debtors is insufficient to discern what property has passed through the Debtors' hands prior to their bankruptcy.

68.     Without tax returns and records reflecting the Debtors' financial condition within the years immediately preceding the Petition Date, Creditors have no way of tracing the flow of funds from and to the various entities in which Debtors had an interest, including DSK Properties and DSK Contractors, or to untangle their financial affairs.

**F.      Failure to Correctly Identify Current Expenditures of Individual Debtors**

69.     Schedule J in relevant part requires that Debtors identify the estimated average or projected monthly expenses of the debtor and the debtor's family as of the Petition Date.

70.     Debtors have listed the amount of $3,558.33 as the rent or home mortgage payment on their residence.

71.     Debtors have also listed the amount of $4,865.00 as the mortgage payment for the property commonly known as 318 Center Grove Road, Randolph, New Jersey ("Randolph Property").

72.     Upon information and belief, Debtors were not paying both mortgage payments as of the Petition Date, and they continue not paying both mortgages at present.

73.     By their intentional misstatement of their monthly mortgage obligations, the Debtors have failed to correctly identify their current expenditures, in contravention of their disclosure obligations under Schedule J of their Petition.

**G.      Intentional Misstatement of the Amount of Claim in Schedule F**

74.     Schedule F in relevant part requires that Debtors identify all entities holding unsecured claims as of the Petition Date and report the amount of claim for each such entity.

75.     Debtors falsely list the amount of Ruppe's claim as $25,000.00.

76.     In fact, the amount of Ruppe's claim is not less than $88,000.00, as reflected by the judgment Ruppe obtained against Kleinschmidt on or about January 29, 2009, and as attached to Ruppe's timely filed proof of claim.

77.     By their intentional misstatement of Ruppe's claim, Debtors have intentionally misstated assets and liabilities of this bankruptcy estate, in contravention of their disclosure obligations under Schedule F of the Petition.

## **FIRST COUNT**

(Objection to Discharge – 11 U.S.C. § 727(a)(3) –
Failure to Maintain Financial Records)

78.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 77 as if set forth fully herein.

79.     In order to avail themselves of the extraordinary remedy of discharge in bankruptcy, Debtors have an obligation to, *inter alia*, keep, maintain and preserve recorded information, in a manner appropriate to Debtors' businesses, from which the Debtors' financial condition or business dealings may be ascertained.

80.     Upon information and belief, Debtors have concealed or failed to maintain any books, records, and financial statements, from which the Debtors' financial condition or business dealings could be ascertained.

81.     In addition, Debtors have failed to file tax returns for income received from DSK Contractors for the years 2005, 2006, 2007, and 2008.

82.     Debtors have failed to file tax returns for income received from DSK Properties for the years 2006, 2007, and 2008.

83.     Debtors have failed to file individual tax returns for the years 2006, and 2007, and 2008.

84.    Without such financial records and information, it is impossible for Creditors to discern the Debtors' financial history and condition.

85.    Based on the foregoing, Debtors are not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(3).

**WHEREFORE**, plaintiff Creditors, RHB Realty, the Seminaras, and Ruppe respectfully request the following relief:

A.    Denial of Debtors' discharge;

B.    Attorneys' fees and costs of suit; and

C.    Such other and further relief as the Court may deem equitable and just.

## SECOND COUNT

(Objection to Discharge – 11 U.S.C. § 727 (a)(4)(A) - False Oath)

86.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 85 as if set forth fully herein.

87.    Debtors have made false representations in their Chapter 7 Petition, Schedules, and Statement of Financial Affairs by failing to disclose all income; all gifts; officer, director, partner or membership positions maintained at business entities; books, records, and financial statements; by failing to correctly identify current expenditures and deliberately misstating the assets and liabilities of the bankruptcy estate.

88.    Such misrepresentations and omissions relate materially to the bankruptcy case as they bear a relationship to the Debtors' business transactions and estate, and concern the discovery of assets and business dealings.

89.    Such statements made by Debtors on their Petition, Schedules, and Statement of Financial Affairs are verified under oath and penalty of perjury.

90.    Debtors made these misrepresentations and omissions knowingly and fraudulently.

91.    Based on the foregoing, Debtors are not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

**WHEREFORE**, plaintiff Creditors, RHB Realty, the Seminaras, and Ruppe respectfully request the following relief:

A.    Denial of Debtors' discharge;

B.    Attorneys' fees and costs of suit; and

C.    Such other and further relief as the Court may deem equitable and just.

### THIRD COUNT

(Objection to Discharge – 11 U.S.C. § 727 (a)(5)(A) – Loss of Assets)

92.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 91 as if set forth fully herein.

93.    By their omissions in their Chapter 7 Petition, Schedules, and Statement of Financial Affairs, and failure to maintain records, Debtors have failed to explain satisfactorily the loss of assets or deficiency of assets to meet their liabilities.

94.    Such omissions relate materially to the bankruptcy case as they bear a relationship to the Debtors' business transactions and estate, and concern the discovery of assets and business dealings.

95.    Debtors made these omissions knowingly and fraudulently.

96.    Based on the foregoing, Debtors are not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

**WHEREFORE**, plaintiff Creditors, RHB Realty, the Seminaras, and Ruppe respectfully request the following relief:

D.      Denial of Debtors' discharge;

E.      Attorneys' fees and costs of suit; and

F.      Such other and further relief as the Court may deem equitable and just.

## FOURTH COUNT

(Nondischargeability of Debt – 11 U.S.C. § 523(a)(2)(A) –
Fraud, False Representation & False Pretense)

97.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 96 as if set forth fully herein.

98.     On April 25, 2008, the Seminaras obtained a judgment against Kleinschmidt in the Superior Court of New Jersey in the amount of $88,872.96.

99.     The Seminaras caused their judgment to be docketed, creating a lien against all of Kleinschmidt's real property in the State of New Jersey.

100.    At or about the time that Kleischmidt was seeking to close on the mortgage ("Randolph Mortgage") with Mark Gordon ("Gordon") in connection with the Randolph Property (unbeknownst to the Seminaras), Kleinschmidt approached the Seminaras requesting that they accept a small portion of the monies then due to them, with a promise to pay the remainder later in time, in exchange for a release of the lien on the Randolph Property.

101.    Upon information and belief, Gordon required Kleinschmidt to clear all liens against the Randolph Property before he would close on the Randolph Mortgage.

102.    In connection with such request and specifically in order to fraudulently induce the Seminaras to agree, Kleinschmidt intentionally misrepresented his ability to satisfy the

judgment unless the Seminaras agreed to enter into a settlement agreement and specifically, the payment schedule set forth therein (the "Settlement Agreement").

103.    Pursuant to the Settlement Agreement, Kleinschmidt represented his intention, *inter alia*, to pay the Seminaras the total settlement amount of $80,000.00 in two payments; the first payment of $20,000.00 to take place on or before August 20, 2008, and the second payment of $60,000.00 to take place on or before February 29, 2009.

104.    Kleinschmidt further fraudulently induced the Seminaras to execute a warrant of satisfaction as to the judgment against him (and thereby clearing the judgment lien against the Randolph Property), upon receipt of the first payment of $20,000.00.

105.    In connection with the Settlement Agreement, Kleinschmidt executed a mortgage and note in the amount of $60,000.00 on the Randolph Property but required the Seminaras to refrain taking any action to record the mortgage until and after the default date of April 20, 2009.

106.    At the time Kleinschmidt made such material misrepresentations, he knew or should have known that such representations were false.

107.    At the time Kleinschmidt made such material misrepresentations, he did so knowingly, with the intent that the Seminaras would rely to their detriment upon them, and to induce the Seminaras into entering into the Settlement Agreement and releasing their lien.

108.    In justifiable reliance upon Kleinschmidt's misrepresentations, the Seminaras entered into the Settlement Agreement and agreed to file a warrant of satisfaction as to the judgment against him, upon receipt of the first payment of $20,000.00.

109.    The Seminaras believed that the only way to have their judgment satisfied by Kleinschmidt was to agree to the Settlement Agreement he proposed.

110.    The Settlement Agreement was effective as of August 20, 2008.

111.    Despite his fraudulent misrepresentations to the Seminaras that he was unable to satisfy their judgment in full without the Settlement Agreement, Kleinschmidt could have paid the Seminaras' judgment in full at the time the Seminaras entered into the Settlement Agreement.

112.    In fact, upon information and belief, the amount of $80,000.00 was escrowed for the express purpose of satisfying the Seminaras' judgment against Kleinschmidt in full, in connection with the Randolph Mortgage.

113.    Upon information and belief, each of the outstanding judgments and liens against the Randolph Property were to be satisfied through the escrowed amounts earmarked for this purpose, including the Seminaras' judgment.

114.    In fact, Kleinschmidt paid only $20,000.00 of the $80,000.00 that was escrowed for the purpose of satisfying the Seminaras' judgment.

115.    Kleinschmidt improperly and fraudulently retained the remaining $60,000.00 that was intended to satisfy the Seminaras' judgment and used these proceeds to satisfy other loans and obligations, and/or for personal gain.

116.    Kleinschmidt failed to make the second payment of $60,000.00 before filing for bankruptcy on February 13, 2009.

117.    Kleinschmidt intentionally misrepresented his financial condition to fraudulently induce the Seminaras to enter into the Settlement Agreement and release liens obtained against Kleinschmidt and Randolph Property.

118.    Kleinschmidt's conduct constitutes the creation of a debt for money obtained by false pretenses, false representations and actual fraud.

119.    Kleinschmidt's conduct has directly and proximately caused the Seminaras damages, including without limitation, the amount of not less than $60,000.00.

120.    The Seminaras' claim constitutes a debt that arose from conduct that would render the debt nondischargeable under section 523(a)(2)(A).

121.    Such debt retained its character as debt arising from the original, wrongful conduct of the debtor.

122.    In accordance with 11 U.S.C. Section 523(a)(2)(A), such debt is non-dischargeable.

**WHEREFORE**, The Seminaras demand judgment against Kleinschmidt, declaring that their claim against Kleinschmidt in the amount of not less than $60,000.00 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); for all damages directly and proximately caused by such false pretenses, false representations, and fraudulent conduct, together with interest and costs of suit; and for such other relief as the Court may deem equitable and just.

## FIFTH COUNT

(Nondischargeability of Debt – 11 U.S.C. § 523(a)(2)(A) –
Fraud, False Representation & False Pretense)

123.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 122 as if set forth fully herein.

124.    On or about January 5, 2006, RHB Realty entered into a Joint Venture Agreement with DSK Contractors, and its members individually, Smith and Kleinschmidt (RHB Realty, DSK Contractors, Smith and Kleinschmidt are referred to as the "Joint Venture"), concerning the construction of a single family home on Lot 76.01, Block 32, as shown on the tax maps of the Township of Chester, Morris County, New Jersey, and commonly known as 164 North Road, Chester, New Jersey (the "Chester Property").    Written amendments to the Joint Venture Agreement were executed by the parties on or about January 24, 2006 and October 25, 2006 (collectively, the "Joint Venture Agreement").

125.    Pursuant to the express terms of the Joint Venture Agreement, RHB Realty was to pay an initial contribution of $200,000.00 to DSK Contractors, Smith, and Kleinschmidt solely for the purpose of DSK Contractor's acquisition of the Chester Property.

126.    Pursuant to the express terms of the Joint Venture Agreement, RHB Realty's total contribution was to be limited to and was not to exceed its initial contribution of $200,000.00, together with up to $35,000.00 toward the cost of excavation and construction of the foundation of the Chester Property (which was to be immediately repaid to RHB Realty from the first draw from the construction loan from Boiling Springs Savings), plus monthly interest payments on that portion of the loan from Boiling Springs Savings attributed to the purchase of the Chester Property and the construction thereupon.

127.    To secure the full repayment of RHB Realty's contribution, the Joint Venture Agreement expressly provided that DSK Contractors and Kleinschmidt would give RHB Realty a Note, jointly and severally promising to repay RHB Realty in full for its contributions to the Joint Venture.  The Note was secured by a second mortgage on the Chester Property and third mortgage on an adjacent property.

128.    DSK Contractors was the managing member of the Joint Venture.

129.    Kleinschmidt was the managing member of DSK Contractors, as well as the General Contractor under the Joint Venture Agreement.

130.    The Joint Venture was required to maintain perfect, just and true books of account, in which every transaction of the Joint Venture was to be fully and accurately entered, pursuant to the terms of the Joint Venture Agreement.

131.    DSK Contractors and Kleinschmidt continued to make such material misrepresentations after RHB Realty entered the Joint Venture Agreement, in order to induce

RHB Realty to advance funds for the Joint Venture. DSK Contractors and Kleinschmidt made multiple and numerous material misrepresentations to RHB Realty regarding, *inter alia*, the progress of the Joint Venture, the delays in construction, the progress of and conditions to requisite financing and the use of advanced funds.

132.    As a result of these misrepresentations, RHB Realty continued to advance funds for the purpose of covering interest and costs on the Chester Property when the loan was actually in default.

133.    DSK Contractors and Kleinschmidt knowingly made false representations to RHB Realty regarding the status of construction financing, in order to induce RHB Realty to continue advancing funds.

134.    DSK Contractors and Kleinschmidt knowingly failed to disclose to RHB Realty that construction financing could not be obtained on the Chester Property until an adjacent property, unrelated to the Joint Venture, was under contract for sale and the loan thereupon fully paid.

135.    DSK Contractors and Kleinschmidt knowingly made material misrepresentations to RHB Realty regarding the use of funds advanced for the purpose of covering interest costs on the Chester Property, which funds were misappropriated and utilized to pay the interest on an adjacent property unrelated to the Joint Venture.

136.    At the time DSK Contractors and Kleinschmidt made such material misrepresentations, Kleinschmidt knew or should have known that such representations were false.

137.    At the time DSK Contractors and Kleinschmidt made such material misrepresentations, Kleinschmidt did so knowingly with the intent that RHB Realty would rely

to its detriment upon them and to induce RHB Realty into continuing to make payments under the Joint Venture Agreement.

138.    In justifiable reliance upon Kleinschmidt's misrepresentations, RHB Realty agreed to enter into the Joint Venture, paying not less than $286,244.17 for the acquisition of the Chester Property, payment of interest on the loan for the Chester Property, and payment for building permits and the installation of the foundation for the Chester Property.

139.    Funds that were advanced by RHB Realty for the Chester Property pursuant to the Joint Venture Agreement were used for purposes unrelated to the Joint Venture, as reflected in certain bank statements of DSK Contractors.

140.    In addition, checks in varying amounts, drawn on DSK Contractors' account(s) were made out to Kleinschmidt, personally, as reflected in certain bank statements of DSK Contractors.

141.    DSK Contractors and Kleinschmidt failed or refused to maintain separate, accurate books and records for the Joint Venture.

142.    DSK Contractors and Kleinschmidt wrongfully commingled funds advanced by RHB Realty pursuant to the Joint Venture Agreement with other DSK Contractor and Kleinschmidt funds and accounts.

143.    DSK Contractors and Kleinschmidt have misappropriated the funds that were advanced by RHB Realty, and/or used such funds to satisfy other debts and obligations of DSK Contractors, DSK Properties, and/or for Debtors' personal gain.

144.    Until Debtors' and their business entities' records are accounted for, RHB Realty cannot determine to what extent its monies and the monies of the Joint Venture were misappropriated.

145.    Kleinschmidt's conduct constitutes the creation of a debt for money obtained by false pretenses, false representations and actual fraud.

146.    Kleinschmidt's conduct has directly and proximately caused RHB Realty damages, including without limitation, the amount of not less than $286,244.17.

147.    In accordance with 11 U.S.C. § 523(a)(2)(A), such debt is non-dischargeable.

**WHEREFORE**, RHB Realty, LLC, demands judgment against Stanley F. Kleinschmidt, declaring that the debt owed by Kleinschmidt in the amount of no less than $286,244.17 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); for all damages directly and proximately caused by such false pretenses, false representations, and fraudulent conduct, together with interest and costs of suit; and for such other relief as the Court may deem equitable and just.

## SIXTH COUNT

(Nondischargeability of Debt – 11 U.S.C. § 523(a)(4) –
fraud or defalcation in a fiduciary capacity)

148.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 147 as if set forth fully herein.

149.    As the managing member of the Joint Venture, DSK Contractors, together with Kleinschmidt, as the managing member of DSK Contractors, owed RHB Realty a fiduciary duty.

150.    DSK Contractors' and Kleinschmidt's wrongful misappropriation and commingling of funds, in their respective capacities as managing members of the Joint Venture and DSK Contractors, constitutes fraud or defalcation in a fiduciary capacity.

151.    DSK Contractors' and Kleinschmidt's conduct has directly and proximately caused RHB Realty damages, including without limitation, the amount of not less than $286,244.17.

152.    In accordance with 11 U.S.C. § 523(a)(4), such debt is non-dischargeable.

**WHEREFORE**, RHB Realty, LLC, demands judgment against Stanley F. Kleinschmidt, declaring that the debt owed by Kleinschmidt in the amount of not less than $286,244.17 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4); for all damages directly and proximately caused by such false pretenses, false representations, and fraudulent conduct, together with interest and costs of suit; and for such other relief as the Court may deem equitable and just.

Dated: August 17, 2009                                   Respectfully submitted,

                                                    **SAIBER LLC**

                                                    s/ *Nancy A. Washington*
                                                    NANCY A. WASHINGTON
                                                    Attorneys for Creditors, RHB Realty, LLC,
                                                      Craig Seminara, Kerry Seminara, and
                                                    Michael Ruppe
                                                    One Gateway Center - 13th Floor
                                                    Newark, New Jersey 07102
                                                    naw@saiber.com
                                                    (973) 622-3333